ORIGINAL

Filed Under Seal

FILED
FEB 2 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| DYNCORP INTERNATIONAL LLC,<br>13500 Heritage Parkway<br>Fort Worth, Texas 76177<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Protected Information To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order<br><br>No. 07-84 C<br><br>Judge ________ |

FILED UNDER SEAL

VERIFIED COMPLAINT FOR DECLARATORY,
INJUNCTIVE, AND MONETARY RELIEF

Nature of the Case

1. Incumbent DynCorp International LLC ("DI") brings this action because the Air Force improperly disqualified it from the competition for aircraft maintenance services for the T-38 aircraft at Beale, Holloman, and Whiteman Air Force Bases. DI was the lower-price offeror, but the Air Force misread DI's technical proposal and, without even the benefit of discussions, eliminated DI and awarded the contract by default to M1 Support Services LP ("M1"), the only other offeror. Because of this and other evaluation irregularities, the award must be set aside and the competition reopened with DI included.

## Jurisdiction

2. This is a protest action by an interested party "objecting . . . to a proposed award or the award of a contract" and alleging a "violation of statute or regulation in connection with a procurement or proposed procurement" by a federal agency. This Court has jurisdiction over this protest pursuant to 28 U.S.C. §§ 1491(a) and (b) (2000).

## Parties

3. The Plaintiff, DynCorp International LLC, is a corporation incorporated under the laws of the State of Delaware. Its principle place of business is Falls Church, Virginia. If the requested relief is granted, DI would be in line for award of the contract. DI, therefore, has standing to pursue this action.

4. The Defendant, the United States of America, has acted through the United States Department of Air Force, Air Combat Command Contracting Squadron, which is a federal agency in the executive branch of Government of the United States. Ms. Jacquelyn O. Cooper is the Contracting Officer responsible for the procurement.

## Statement of the Case

### The Solicitation

5. On July 3, 2006, the Air Force issued Request for Proposals No. FA4890-06-R-0165 ("RFP" or "Solicitation"). The Solicitation contemplated a two-month transition period beginning February 1, 2007, and ending March 31, 2007.

The initial performance period is for the six months beginning April 1, 2007, and ending September 30, 2007. Thereafter, there are four, one-year options.

6. The Solicitation provided that proposals would "be evaluated using four evaluation factors: (1) Mission Capability, (2) Proposal Risk, (3) Past Performance, and (4) Price/Cost. Mission Capability and Proposal Risk are in descending order of importance. Past Performance is equal in importance to Mission Capability. All three (3) factors are more important than the Price/Cost factor." (RFP at 109, § M-3.)

7. Under the Mission Capability factor, there are three subfactors: Program Management, Operations and Maintenance, and Transition/Phase In. Program Management and Operations and Maintenance are equally important. Transition/Phase In is the least important of the three rated subfactors. (RFP at 109, § M-4.2.)

8. For the Program Management subfactor, there are three "aspects": Management and Integration, Human Resources, and Quality Management System. (RFP at 110, § M-4.4.1.)

9. The Operation and Maintenance subfactor has four "aspects": Maintenance Management Program, Off-Station and Operating Location Aircraft Recoveries/Repairs, Approach to Improve Aircraft Phase Inspection Turnaround, and Maintenance Information System (MIS) Data Integrity. (RFP at 110, § M-4.4.2.)

10. Two of these Operation and Maintenance subfactor aspects related to data integrity. Specifically, the aspect "Approach to Improve Aircraft Phase Inspection Turnaround" is defined as follows:

> Demonstrates innovations/efficiencies to reduce aircraft phase inspection turnaround times. Provides data integrity identifying specific areas of the phase process where initiatives will reduce steps, eliminate inefficiencies, and streamline processes. Demonstrates projected reductions, in number of hours or days on a typical T-38 aircraft phase inspection.

(RFP at 110, § M-4.4.2.3.) Similarly, the "Maintenance Information System (MIS) Data Integrity" aspect is defined as follows:

> Demonstrates a comprehensive, effective, and logical MIS integrity program to ensure accurate and complete data within aircraft/equipment forms documentation and the Core Automated Maintenance System (CAMS). Demonstrates a process of MIS training, data analysis, identification and correction of poor data integrity.

(RFP at 110, § M-4.4.2.4.)

11. The Transition/Phase In subfactor consisted of one aspect, Transition Plan. (RFP at 111, § M-4.4.3.)

12. Mission Capability was to be evaluated in accordance with the color criteria set forth in the Air Force FAR Supplement § 5315.305:

| Color | Rating | Definition |
|---|---|---|
| Blue | Exceptional | Exceeds specified minimum performance or capability requirements in a way beneficial to the Air Force. |
| Green | Acceptable | Meets specified minimum performance or capability requirements necessary for acceptable contract performance. |

| | | |
|---|---|---|
| Yellow | Marginal | Does not clearly meet some specified minimum performance or capability requirements necessary proposal inadequacies are correctable. |
| Red | Unacceptable | Fails to meet specified minimum performance or capability requirements. Proposals with an unacceptable rating are not awardable. |

(RFP at 109, § M-4.1.)

13. The evaluation criteria further provided that the government would "assess proposal risk for all Mission Capability subfactors . . . using the following ratings: High, Moderate and Low . . . ." (RFP at 111, § M-5.1.)

14. For past performance, the Air Force was required to evaluate each "offeror's present and past work record so that the Government can make a determination about its confidence in the offeror's probability of successfully performing as proposed." (RFP at 111, § M-6.1.)

15. The RFP provided that each past performance reference would be judged for relevance using the following criteria

| RATING | DEFINITION |
|---|---|
| HIGHLY RELEVANT | Past performance effort involved is essentially the same magnitude and complexity of effort, or portion of the effort, as the proposed contribution, of the offeror, teaming partner, or subcontractor, to this solicitation. |
| RELEVANT | Past performance effort involved is much of the same magnitude and/or complexity of effort, or portion of the effort, as its proposed contribution, of the offeror, teaming partner, or subcontractor, to this solicitation. |
| SOMEWHAT | Past performance effort involved is |

Case 1:07-cv-00084-LJB Document 1-1 *SEALED* Filed 02/02/2007 Page 7 of 11

| | |
|---|---|
| RELEVANT | some of the same magnitude and/or complexity of effort, or portion of the effort, as the proposed contribution, of the offeror, teaming partner, or subcontractor, to this solicitation. |
| NOT RELEVANT | Past performance effort did not involve any of the magnitude and complexity of effort, or portion of the effort, as the proposed contribution, of the offeror, teaming partner, or subcontractor, to this solicitation. |

(RFP at 112, § M-6.1.)

16. In addition, the Solicitation provided that each offeror would be scored under the Past Performance factor as either High Confidence, Significant Confidence, Satisfactory Confidence, Unknown Confidence, Little Confidence, or No Confidence. (RFP at 112-13, § M-6.2.)

<u>The Evaluation</u>

17. DI and M1 submitted the only proposals under the RFP.

18. On December 22, 2006, the Air Force notified DI that M1 had been awarded the contract.

19. On January 16, 2007, the Air Force debriefed DI. At the debriefing, the Air Force disclosed that, notwithstanding DI's status as the incumbent contractor with near perfect award fee awards over the past few years, DI and M1 received the identical Significant Confidence ratings.

20. Similarly, DI and M1 were rated virtually identical under two of the three Mission Capability subfactors. Under Program Management, both were assessed the highest Blue/Exceptional, Low Risk score. Under Transition/Phase In,

Case 1:07-cv-00084-LJB *SEALED* Document 1-1 Filed 02/02/2007 Page 8 of 11

both were awarded a Green/Acceptable, Low Risk, despite the fact that, as the incumbent, there would be virtually no transition for DI.

21. Despite a 10% price preference afforded to M1 as a purported HUBZone contractor, DI was the low priced offeror with an evaluated price of $41,278,267 as compared to M1's price of $41,827,924. DI's actual price was $37,525,697, approximately 10 percent lower than M1's.

22. The key discriminator was under the Operations & Maintenance subfactor. M1 was awarded a Blue/Exceptional, Low Risk, while DI was rated Red/Unacceptable, High Risk. The reason for DI's "unacceptable" rating, which resulted in the exclusion of DI from the competitive range, was a single deficiency and a related weakness. DI also received a second "weakness" rating.

23. Specifically, the Source Selection Decision Document ("SSDD") identified the following deficiency for DI:

> Maintenance Information System (MIS) Integrity
>
> The offeror's proposal failed to demonstrate a process for MIS training. The offeror identified ways to monitor, review, and correct data integrity; however, it failed to provide a process for MIS training. In the proposal, the importance of emphasis on data integrity during new employee orientation training is noted in the list of the Data Integrity Team (DIT) Chiefs specific responsibilities and the importance of identification and correction of poor data integrity is also noted. However, the offeror did not provide information regarding the MIS training process. This deficiency has an associated risk which is described as the second weakness listed.

(SSDD at 7.)

24. DI was assessed weaknesses for the following:

> (1) Approach to Improve Aircraft Inspection Turnaround
>
> The offeror's proposed approach did not provide sufficient data integrity identifying specific areas of the phase process where initiatives will reduce steps, eliminate inefficiencies, and streamline processes to support a reduction of aircraft phase inspection turnaround time (TAT). The offeror provided general managerial actions to address the challenges of reducing TAT, but did not provide specific information on process improvements that would result in the reduction of TAT.
>
> (2) Maintenance Information System (MIS) Integrity
>
> The offeror's proposal contained a flaw which increased the risk of unsuccessful contract performance. This weakness is associated with the MIS training deficiency described previously and drives the HIGH risk rating. It will likely cause significant disruption of schedule, increased cost, and/or degradation of performance. The potential degradation of aircraft data integrity could result in damage to equipment and/or injury or loss of life for personnel.

(SSDD at 8.) This latter weakness corresponded to the alleged deficiency which DI was assessed. The deficiency and both weaknesses were based on inaccurate and erroneous readings of DI's proposal and, in any event, could easily have been corrected and/or clarified if the Air Force had conducted discussions.

25. Based on the perceived deficiency that DI failed to provide "information regarding the MIS training process" with respect to data integrity, DI was deemed disqualified and excluded from the competitive range, resulting in a default award to M1.

26. The Source Selection Authority based his award decision, in part, on his conclusion that there was a "Low Probability that Discussions (allowing offerors to revise their proposals) would result in the Other Offeror's Ratings Exceeding

Case 1:07-cv-00084-LJB Document 1-1 *SEALED* Filed 02/02/2007 Page 10 of 11

those of M1S." (SSDD at 13.) This conclusion is erroneous. If DI had been informed of the perceived deficiency and weaknesses, it could have clarified and amplified its proposal to have obtained the highest scores on the relevant subfactors and would have won the award.

27. The SSDD also disclosed that the Air Force had discussions with M1 regarding "the application of the proposed handling rate percentages." (SSDD at 12.) The Air Force did not have any discussions with DI.

<u>Irreparable Injury</u>

28. DI has no adequate remedy in law and will suffer irreparable injury if an injunction is not entered. First, if the award is allowed to proceed, DI will be unlawfully denied the potential profits to be realized from this contract. Moreover, DI is the incumbent contractor and, therefore, has valued and knowledgeable staff that would be lost by allowing the award of this unlawful contract to proceed. DI would lose a valued presence on certain Air Force bases from which it would otherwise pursue new opportunities and future employees.

29. By contrast, the Air Force will not suffer any legally cognizable injury. The injunction will merely require the Air Force to comply with the duly enacted statutes and regulations of the United States. The integrity of the procurement system demands compliance with all applicable laws and regulations.

30. If the evaluation is conducted properly, the Air Force will likely award to DI and have the benefit of a lower risk and lower priced contract.

Case 1:07-cv-00084-LJB Document 1-1 *SEALED* Filed 02/02/2007 Page 11 of 11

31. Enjoining the award will not harm the Air Force because it will leave DI in place to perform the services as it has done so well to date.

32. M1 has not begun transition and is not scheduled to take over performance until April 1, 2007. Any harm to M1 can be remedied under the termination for convenience clause. M1 has no right to perform an illegally awarded contract.

## Claims for Relief

### Count I

### The Air Force Irrationally Excluded DynCorp International LLC from the Competitive Range and Unreasonably Failed to Conduct Discussions

33. DI incorporates by reference paragraphs 1 through 32 of this Complaint.

34. Agency decisions to disqualify an offeror to create a competitive range of one offeror are subject to close scrutiny. "If there is a close question of acceptability; if there is an opportunity for significant cost savings; if the inadequacies of the solicitation contributed to the technical deficiency of the proposal; if the informational deficiency could be reasonably corrected by relatively limited discussions, then inclusion of the proposal in the competitive range and discussions are in order." *Falcon Sys, Inc.*, 84-1 CPD ¶ 658 (1984); *accord Birch & Davis Int'l, Inc., v. Christopher*, 4 F.3d 970, 974 (Fed. Cir. 1993). Here, DI was eliminated from the competitive range despite the presence of all of these factors requiring it to have been included in the range and discussions to have been conducted.