Agreed-Upon Redacted Copy – May Be Made Public

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DYNCORP INTERNATIONAL LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-84C |
| | ) | Bid Protest |
| THE UNITED STATES, | ) | (Judge Bush) |
| Defendant, | ) | |
| M1 SUPPORT SERVICES LP, | ) | |
| Intervenor-defendant. | ) | |

DECLARATION OF JACQUELYN O. COOPER

1. I, Jacquelyn O. Cooper, have been a Contracting Officer (CO) for the United States Air Force (USAF) since September 2005. Prior to working as a CO, I served as a contract specialist for the USAF since April 1997. I currently work as a CO for the Acquisition Management and Integration Center, where I performed this duty for the Consolidated Aircraft Maintenance (CAM) acquisition which included the source selection. In accordance with AFFARS MP5315.3, my duties as a CO include:

> Ensure that, in accordance with AFFARS 5315.305(c), required approvals are obtained and contract clause requirements are met before non-government personnel are allowed to provide source selection support; Manage all business aspects of the acquisition; Ensure that procedures exist to safeguard source selection information in accordance with FAR 3.104 as supplemented; Approve access to or release of source selection information before and after contract award, in accordance with FAR 3.104-4; Maintain source selection evaluation records; Ensure that any requests for source selection delegations are properly accomplished and documented in the Source Selection file; After receipt of proposals, control exchanges with offerors in accordance with FAR 15.306 ; If awarding without discussions, obtain contract clearance approval prior to contract award; and ensure unsuccessful offerors are debriefed in accordance with FAR 15.505 & 15.506 and AFFARS 5315.506 and document the debriefing(s) provided to offeror(s).

2. The CAM source selection was conducted in accordance with the following guidance: (1) Federal Acquisition Regulation (FAR) Part 15, Contracting by Negotiation; (2) Air Force Federal Acquisition Regulation Supplement (AFFARS) Subpart 5315.3, Source Selection; (3) AFFARS Source Selection Mandatory Procedure MP5315.3 dated 10 August 2005; (4) the CAM Source Selection Plan (SSP), the plan that describes how the source selection will be organized, how proposals will be evaluated

and analyzed, and how a source will be selected; and (5) the Request for Proposal (RFP), Solicitation No. FA4890-06-R-0165. Adherence to the AFFARS procedure is required for all competitive negotiated acquisitions conducted by Air Force contracting activities with the exception of certain exemptions that are not applicable to subject acquisition. Sections L of the RFP contained Instructions, Conditions and Notices to the offerors. Section M of the RFP included the evaluation factors for award. It described the areas the Government would be evaluating for the source selection.

An integrated assessment of the proposals was conducted by the Source Selection Evaluation Team (SSET). This team consisted of experts from several different disciplines. Once the integrated assessment was completed by the SSET, the evaluation results were presented to the Source Selection Authority (SSA) so that a decision could be reached. After an extensive review of the source selection documentation and consultation with the Source Selection Evaluation Team (SSET), it was determined by the SSA that the proposal submitted by M1 Support Services, LP offered the greatest overall benefit in satisfying the Air Force's stated requirements. Therefore, in accordance with FAR 52.215-1 and the Request for Proposal, award was made without discussions based on M1S' proposal [redacted]

3. As previously mentioned, contract award was made without discussions. At no time was a competitive range established. From the posting of the final RFP to the source selection decision, the government stated its intent to award without discussions several times including the following: (1) Federal Acquisition Regulation (FAR) Clause 52.215-1, Instructions to Offerors—Competitive Acquisition, (2) Paragraph L-7, Exceptions; in Section L, Instructions, Conditions and Notices to Bidders; of solicitation, (3) Paragraphs M-1.3 and M-2.1 of Section M, Evaluation Factors for Award, of the solicitation, and (4) Government's Response to Potential Awardee's Question during Post Site Visit Meeting. The Government's response was posted on the Federal Business Opportunities website which can be accessed by any interested party. However, The Government did issue Evaluation Notices in accordance with FAR 15.306(a)(1-3). These ENs were issued for clarification purposes only. Clarifications as defined by FAR 15.306 are limited exchanges between the Government and offerors that may occur when award without discussions is contemplated. The successful awardee was not allowed to revise its proposal at any time in response to the ENs. Of prime importance is the fact that the awardee's responses to the ENs did not affect or change the evaluation results. The circumstances of each EN below address the clarification and resulting action from the EN after the awardee's responses.

- <u>EN Control # P-1</u> – clarification stated:

  [redacted]

  <u>CIRCUMSTANCES</u>:

Paragraph L-10.1 of the solicitation states "Offerors shall include pricing for all Fixed-Price CLINs including CLINs for options listed in Part I, Section B, Supplies or Services and Prices, of the solicitation. This section shall include all unit costs (if applicable) and total extended amounts for all CLINS, except for those denoted as "Not-to-Exceed (NTE)" and "Not Separately Priced (NSP)". For Cost-Reimbursable CLINs, offerors shall provide the proposed fully-burdened handling rate expressed as a percentage that will be applied to such costs in the space provided with each applicable CLIN and apply this rate to the listed Not-to-Exceed (NTE) amount to arrive at a total extended amount. The percentage rate proposed for each CLIN with a handling rate will be applicable to charges made under that cost-reimbursable CLIN and will be incorporated into the contract. These proposed rates will be the rates used for the duration of the contract.

Paragraph M-7.1 of the solicitation states in part that "The Government has provided estimates for the cost-reimbursable CLINs. The awardee's proposed burden/handling rate for the cost-reimbursable CLINs shall be applied to arrive at the total extended amount. These extended amounts shall be included in the total evaluated price." Paragraph M-7.2 of the solicitation states in part that "The handling rate will be evaluated by comparing proposed rates received in response to the solicitation." [redacted]

Resulting Action from the Clarification EN
The EN did not allow the awardee [redacted] were evaluated as stated in the solicitation. [redacted] for the awardee did not change as a result of the EN. The EN simply allowed the awardee to resolve a minor clerical error.

- EN Control # P-2 - clarification stated: [redacted]

  CIRCUMSTANCES:
  Paragraph L-10.3.1 of the solicitation states in part, "since a portion of the contract requirements will be included on a cost-reimbursable basis, provide a copy of your disclosure statement with the proposal as well as identification of compliance with Cost Accounting Standards (CAS), if applicable, and any CAS violations and subsequent corrections. Additionally, provide documentation of a Defense Contract Management Agency (DCMA)-approved purchasing system which is in compliance with your disclosure statement."

  Resulting Action from the Clarification EN
  The government did not state in the solicitation that offerors' [redacted] would be evaluated. Therefore, the documentation requested had no effect on the evaluation of the proposals' technical merit or price. Further, the requirement to

submit documentation relating to an approved purchasing system was conditioned on the existence of a CAS disclosure statement. Thus, the EN simply allowed the offeror to provide additional information to be used in our general assessment of M1's responsibility. The information that we received from M1 in response to the clarification request [redacted]

- EN Control # P-3 - clarification stated: [redacted]

CIRCUMSTANCES:
Paragraph L-10.3.2 of the solicitation states in part "Include the most recent financial statements that are available." FAR Part 9, Contractor Qualifications, requires that the CO determine that prospective contractors are responsible prior to contract award. The part includes the general standards that must be met in order for this determination to be made. One of the standards pertains to financial resources.

Resulting Action from the Clarification EN
[redacted] make a determination regarding the financial resources standard. The government did not state in the solicitation that offerors' [redacted] would be evaluated. Therefore, the documentation requested had no effect on the evaluation of proposals.

- EN Control # MC-1 - clarification stated: [redacted]

CIRCUMSTANCES:
[redacted]

Resulting Action from the Clarification EN
With this EN the government is [redacted] This confirmation had no effect on the evaluation of proposals.

- EN Control # MC-2 - clarification stated:

[redacted]

CIRCUMSTANCES:
[redacted]

Resulting Action from the Clarification EN
This EN in which the offeror [redacted] The awardee's response to this EN had no effect on the evaluation of proposals. The Technical Team requested [redacted]

- EN Control # MC-3 - clarification stated:

[redacted]

CIRCUMSTANCES:
Paragraph L-6.1 of the solicitation states in part that "The Government may incorporate into the contract by reference or full text portions of the successful awardee's proposal . . . ." Paragraph M-4.3 of the solicitation further states that "Offerors are advised that any features or technical offerings that exceed PWS requirements and are accepted by the Government may be incorporated as a requirement in the resultant contract." [redacted]

Resulting Action from the Clarification EN
The purpose of this EN was [redacted] This EN did not allow the awardee to revise its proposal. The awardee's response to this EN had no effect on the evaluation of proposals.

4. ENs, for the purpose of discussions, are not issued when award is made without discussions. Therefore, the SSA was presented with SSET's recommendation to award

without discussions to M1S based on the following findings: [redacted] During the SSET's presentation to the SSA, the SSA was also presented with an alternative to awarding to M1S without discussions. AR 735. The alternative was the inclusion of both offerors into the competitive range and allowing both offerors to address any deficiencies, weaknesses and/or uncertainties by entering discussions and releasing evaluation notices for that purpose. The notation that "additional funds [were] required prior to entering discussions" was included for informational purposes only. See AR 735. The "cost" mentioned is not the "additional cost of establishing a competitive range," but is the amount of additional funds required to execute the contract [redacted] The [redacted] that exceeded the available funds at the time of the briefing.

5. The SSA ultimately decided to award the contract without discussions based upon M1S's [redacted] and the low probability that discussions would result in [redacted]

I declare that under penalty of perjury that the foregoing is true and correct.

Executed on February 26, 2007

Jacquelyn O. Cooper
Contracting Officer
United States Air Force

Agreed-Upon Redacted Copy - May Be Made Public

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DYNCORP INTERNATIONAL LLC, Plaintiff, | ) | |
| v. | ) | No. 07-84C |
| | ) | Bid Protest |
| THE UNITED STATES, Defendant, | ) | (Judge Bush) |
| M1 SUPPORT SERVICES LP, Intervenor-defendant. | ) | |

DECLARATION OF BEVERLY R. TUTTLE

I, Beverly R. Tuttle, under penalty of perjury pursuant to 28 U.S.C. § 1746, declare:

1. I am a Technical Sergeant in the United States Air Force. I served as the Source Selection Technical Team (SSET) as the chairperson for the technical team for the Consolidated Aircraft Maintenance (CAM) source selection. In accordance with AFFARS MP 5315.305, my duties included, ensuring that proposals were evaluated based solely on the criteria contained in the solicitation Section M and ensuring the evaluation was properly documented.

2. The technical team conducted an in-depth review and evaluation of each proposal submitted against the factors and sub-factors and other solicitation requirements, in accordance with AFFARS MP 5315.305. We reviewed two proposals received from M1 Support Services (M1S) and DynCorp International, LLC (DI). In accordance with the Request for Proposal's (RFP) also known as the solicitation, terms and conditions, the team used a best value determination based on an integrated assessment of the offerors, Mission Capability. The relative weight of the factors and sub-factors are as follows:

Factor 1 Mission Capability
- Sub-Factor A – Program Management
- Sub Factor B – Operations and Maintenance
- Sub Factor C – Transition/Phase In

As stated in the RFP, Sub-factor A is equal to Sub-Factor B; Sub Factor C is least important.

3. The technical team consisted of four experts from their respective fields. The process for evaluating a source selection starts with the evaluator (individual) level and develops into group (team) consensus through discussions with all team members. An understanding must be met by all members before final group consensus is submitted to the Source Selection Evaluation Team (SSET) Chairman. A dissenting opinion is noted and documented for the record. This was not the case in our team consensus. While

opinions varied with each individual evaluation, unanimous team consensus was reached at each Aspect and Sub-factor level.

4. The Technical Team evaluated both proposals in accordance with RFP requirements as stated above. Although, [redacted]

Evaluators were bound by the source selection guidance to evaluate the proposals by what was within the proposals. The Technical Team was not privy to any performance data, i.e. Award Fee performance awards; nor were we allowed to seek and evaluate any information beyond that which was provided within the contract proposals. In other words, the Technical Team could only evaluate according to what DI stated in their proposal. The unanimous consensus of the Technical Team was that [redacted]

5. [redacted] The consensus of the Technical Team was unanimous.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 26 February 2007

TSgt Beverly Tuttle, USAF
CAM Technical Team Chairperson