**AGREED-UPON REDACTED COPY–**
**MAY BE MADE PUBLIC**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
BID PROTEST

| | | |
|---|---|---|
| DYNCORP INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-84C |
| v. | ) | |
| | ) | (Judge Bush) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| M1 SUPPORT SERVICES LP, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**<u>MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD</u>**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

TODD M. HUGHES
Assistant Director

OF COUNSEL:

MAJOR CHRISTOPHER M. SCHUMANN
Commercial Litigation Division
Air Force Legal Operations Agency
1501 Wilson Blvd., Suite 604
Arlington, VA 22209-2403

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

March 6, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . ii

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD . . . . . 1

MEMORANDUM OF LAW . . . . . 1

ARGUMENT . . . . . 1

I. The Air Force Properly Decided Not To Conduct Discussions Or To Create A Competitive Range . . . . . 1

II. The Air Force Did Not Conduct Discussions With Either Offeror . . . . . 7

A. Post FAR Part 15 Rewrite Decisions Concerning The Distinction Between Clarifications And Discussions . . . . . 7

B. The Communications Between M1 And The Air Force Constituted Clarifications Because M1 Did Not Revise Its Proposal In Any Material Respect . . . . . 9

C. Any Communications With DynCorp Regarding [*****] In Its Proposal Would Have Constituted Discussions . . . . . 12

III. M1 Was Eligible For Award . . . . . 13

A. M1's Proposal Satisfied All Material Requirements Of The Solicitation . . . . . 13

B. A DCMA-Approved Purchasing System Is Not A Material Requirement Of The Solicitation . . . . . 15

IV. Neither The Air Force Nor M1 Illegally Modified M1's Proposal Post Award . . 18

V. DynCorp Has Not Demonstrated Irreparable Injury . . . . . 20

CONCLUSION . . . . . 20

# TABLE OF AUTHORITIES

Page

## Federal Cases

Banknote Corp. of Am. v. United States,
56 Fed. Cl. 377 (2003) . . . . . . . . . . 13

Bean Dredging Corp. v. United States,
22 Cl. Ct. 519 (1991) . . . . . . . . . . 14, 15

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) . . . . . . . . . . 9

Birch & Davis Int'l, Inc. v. Christopher,
4 F.3d 970 (Fed. Cir. 1993) . . . . . . . . . . 5

Blount v. United States,
22 Cl. Ct. 221 (Cl. Ct. 1990) . . . . . . . . . . 14

Chas. H. Tompkins Co. v. United States,
43 Fed. Cl. 716 (1999) . . . . . . . . . . 13, 16

Dynacs Eng'g Co. v. United States,
48 Fed. Cl. 124 (2000) . . . . . . . . . . 10

E.W. Bliss Co. v. United States,
77 F.3d 445 (Fed. Cir. 1996) . . . . . . . . . . 6

Firearms Training Sys., Inc. v. United States,
41 Fed. Cl. 743 (1998) . . . . . . . . . . 2

Info. Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003) . . . . . . . . . . 3, 7, 8, 11

Info. Tech. & Applications Corp. v. United States,
51 Fed. Cl. 340 (2001) . . . . . . . . . . 2

Int'l Res. Recovery, Inc. v. United States,
64 Fed. Cl. 150 (2005) . . . . . . . . . . 11

JWK Int'l Corp. v. United States,
49 Fed. Cl. 371 (2001) . . . . . . . . . . 4

JWK Int'l Corp. v. United States,
52 Fed. Cl. 650 (2002) . . . . . . . . . . 3

Microdyne Outsourcing, Inc. v. United States,
72 Fed. Cl. 694 (2006) . . . . . . . . . . 6, 13

Novosteel SA v. United States, Bethlehem Steel Corp.,
284 F.3d 1261 (Fed. Cir. 2002) . . . . . . . . . . 18

Rig Masters, Inc. v. United States,
70 Fed. Cl. 413 (2006) . . . . . . . . . . 3

Securenet Co. Ltd. v. United States,
72 Fed. Cl. 800 (2006) . . . . . . . . . . 10

Spherix, Inc. v. United States,
62 Fed. Cl. 497 (2004) . . . . . . . . . . 20

VMS Hotel Partners v. United States,
30 Fed. Cl. 512 (1994) . . . . . . . . . . 14, 16

World Travel Serv. v. United States,
49 Fed. Cl. 431 (2001) . . . . . . . . . . 4

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) . . . . . . . . . . 20

Federal Statutes

41 U.S.C. § 253b . . . . . . . . . . 3

10 U.S.C. § 2305 . . . . . . . . . . 3

Federal Regulations

13 C.F.R. § 121.201 . . . . . . . . . . 17

48 C.F.R. § 14.301(a)(1988) . . . . . . . . . . 14

48 C.F.R. § 15.306 . . . . . . . . . . 2, 3, 5, 6, 8, 13

48 C.F.R. § 15.609 (1996) . . . . . . . . . . 5

48 C.F.R. § 44.302(a) . . . . . . . . . . 17

48 C.F.R. § 9.104-1 . . . . . . . . . . 11, 15, 17, 18

48 C.F.R. § 9.104-2 . . . . . . . . . . 16

48 C.F.R. § 9.105-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

48 C.F.R. § 9903.202-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

AFFARS § 5315.305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Additional Authorities

62 Fed. Reg. 51,255 (Sept. 30, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gen. Dynamics-Ordnance & Tactical Sys., Comp. Gen. Dec. B-295,987, B-295,987.2,
2005 CPD ¶ 114, 2005 WL 1468418 (May 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

J. Cibinic & R. Nash, Formation of Government Contracts 405-06 (1986) . . . . . . . . . . . . . . . . 14

Lockheed Martin Simulation, Training & Support, Comp. Gen. Dec. B-292,836.8-.10,
2005 CPD ¶ 27, 2004 WL 3217797 (Nov. 24, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

Omega World Travel, Comp. Gen. Dec. B-283,218,
2002 CPD ¶ 5, 1999 WL 33456229 (Oct. 22, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Priority One Servs., Inc., Comp. Gen. Dec. B-288836, B288836.2,
Dec. 17, 2001, 2002 CPD 79. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Robotic Sys. Tech., Comp. Gen. Dec. B-278,195.2,
98-1 CPD ¶ 20 (Jan. 7, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Sayed Hamid Behbehani & Sons, Comp. Gen. Dec. B-288,818.6,
2002 CPD ¶ 163, 2002 WL 31159457 (Sept. 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TDS, Inc., Comp. Gen. Dec. B-292624,
Nov. 12, 2003, 2003 CPD 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wright Assocs., Inc., Comp. Gen. Dec. B-238,656,
90-1 CPD ¶ 549 (June 12, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
BID PROTEST

| | | |
|---|---|---|
| DYNCORP INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-84C |
| v. | ) | |
| | ) | (Judge Bush) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| M1 SUPPORT SERVICES LP, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 52.1 and 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's order, dated February 14, 2007, defendant, the United States, respectfully submits this reply in support of its motion for judgment upon the administrative record, filed on February 26, 2007. In support of this reply, we rely upon the administrative record filed in this case, our motion for judgment upon the administrative record, and the following memorandum of law.

MEMORANDUM OF LAW

ARGUMENT

I. The Air Force Properly Decided Not To Conduct Discussions Or To Create A Competitive Range

Plaintiff, DynCorp International, LLC ("DynCorp") argues that the United States Air Force ("Air Force") created a de facto competitive range of one when it chose to award the Consolidated Aircraft Maintenance ("CAM") contract to intervenor-defendant, M1 Support

Services LP ("M1"), and its decision to do so cannot withstand strict scrutiny. Pl. Resp. at 3-9.[1] DynCorp's argument ignores the Air Force's statements in the administrative record that it decided not to establish a competitive range for the procurement, or enter into discussions. AR 745, 782-83, 808.[2] DynCorp, in essence, appears to be arguing that when there are only two offerors, and one offeror has been evaluated to have deficiencies or weaknesses that could be remedied if discussions were conducted, the agency is required to create a competitive range and conduct discussions. DynCorp has not cited any legal authority, post-Federal Acquisition Regulation ("FAR") Part 15 rewrite, that supports such a requirement.

In fact, FAR § 15.306 and recent caselaw, suggests otherwise. FAR § 15.306 only requires the establishment of a competitive range when discussions are to be conducted. FAR § 15.306(c)(1); see also Firearms Training Sys., Inc. v. United States, 41 Fed. Cl. 743, 746 (1998) (noting that the Government will establish a competitive range in those instances where it intends to engage in "discussions" with an offeror during which the offeror will be afforded an opportunity to revise its proposal); Info. Tech. & Applications Corp. v. United States, 51 Fed. Cl. 340, 354 (2001) (noting that the FAR contemplates the possibility of "discussions" after a competitive range determination has been made).

> There generally is no obligation that a contracting agency conduct discussions where the RFP specifically instructs offerors of the agency's intent to award a contract on the basis of initial proposals. . . . The contracting officer's discretion in deciding not to hold discussions is quite broad.

---

[1] "Pl. Resp.__" refers to plaintiff's reply brief in support of its motion for judgment upon the administrative record and response to the cross-motions of defendant and intervenor, filed on March 2, 2007.

[2] "AR__" refers to the administrative record that was filed with the Court on February 9, 2007 and supplemented on February 14, 2007.

Omega World Travel, Comp. Gen. Dec. B-283,218, 2002 CPD ¶ 5, 1999 WL 33456229, at *4 (Oct. 22, 1999) (citing Robotic Sys. Tech., Comp. Gen. Dec. B-278,195.2, 98-1 CPD ¶ 20, at 11 (Jan. 7, 1998)); see also Rig Masters, Inc. v. United States, 70 Fed. Cl. 413, 421 (2006) (quoting JWK Int'l Corp. v. United States, 52 Fed. Cl. 650, 663 (2002)). Even where "discussions might have increased the pool of acceptable bidders to include plaintiff, this does not necessarily mean that the agency was required to conduct them." Rig Masters, 70 Fed. Cl. at 421.

The best authority which defines the duty, or lack of duty, of the Government to engage in clarifications and/or discussions with both offerors when only two offerors are participating in a negotiated procurement is the plain language of FAR § 15.306.[3] That section defines "clarifications" as limited exchanges that may occur when award without discussions is contemplated. FAR § 15.306(a)(1). Clarifications give offerors the opportunity to clarify certain aspects of their proposals or to resolve minor or clerical errors. Id. § 15.306(a)(2). Unlike discussions, which must be conducted with "each offeror within the competitive range," FAR § 15.306(d)(1), clarifications may be conducted with only one offeror. See Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1318 (Fed. Cir. 2003) (citing 41 U.S.C. § 253b(d)(1)(B) (2000); 10 U.S.C. § 2305(b)(4)(A)(ii) (2000)); Gen. Dynamics-Ordnance & Tactical Sys., Comp. Gen. Dec. B-295,987, B-295,987.2, 2005 CPD ¶ 114, 2005 WL 1468418, n.4 (May 20, 2005) ("clarifications, in contrast to discussions, do not trigger a requirement that the agency seek clarifications from other offerors"). When one offeror has submitted an initial proposal that is technically acceptable and its offered price is fair and reasonable, an agency may

[3] This paragraph responds to the third question set forth in this Court's order of February 27, 2007: "What is the best authority which defines the duty, or lack of duty, of the government to engage in clarifications and/or discussions with both offerors when only two offerors are participating in a negotiated procurement in circumstances similar to this procurement?"

make an award without discussions. Omega, 1999 WL 33456229, at * 5. "Ultimately, both the decision to conduct discussions and the scope of any discussions are left to the judgment of the contracting officer." World Travel Serv. v. United States, 49 Fed. Cl. 431, 439 (2001) (citations omitted).

In one procurement reviewed by this Court, where there were only two offerors, the Navy decided to conduct discussions after it determined that both proposals contained deficiencies and weaknesses. JWK Int'l Corp. v. United States, 49 Fed. Cl. 371, 376-77, 381 (2001). In contrast, in this case, the Air Force properly chose not to conduct discussions because one offeror's proposal did not contain deficiencies or weaknesses, it was technically acceptable, and its offered price was found to be fair and reasonable. AR 807-808. Accordingly, the presence of two offerors alone is not a sufficient basis for the Air Force to be required to establish a competitive range and conduct discussions when one proposal is found to be deficient.

The solicitation provided that:

> The Government may make a final determination as to whether the offeror's proposal is acceptable or unacceptable solely on the basis of the initial proposal as submitted. Accordingly, offerors are advised to submit initial proposals that are fully and clearly acceptable without the need for submission of additional information. A competitive range, if required, may be further reduced for purposes of efficiency pursuant to FAR 15.306(c)(2).

AR 173 (emphasis added). The offerors were on clear notice that their proposal should be fully and clearly acceptable without the need for discussions or the submission of additional information. If DynCorp intended to include in its proposal a "straightforward, common-sense response," Pl. Resp. at 7, to the solicitation's requirement [*****], AR 175, it should have been included in its initial proposal. See JWK, 49 Fed. Cl. at 395. The Air Force was not required to hold discussions to give DynCorp a second chance to submit a proposal that was fully and clearly

acceptable.

While we do not dispute that this Court has continued to favorably cite Birch & Davis International, Inc. v. Christopher, 4 F.3d 970, 973-74 (Fed. Cir. 1993), since the FAR Part 15 rewrite in 1997, see Pl. Resp. at 3-4, that standard is inapplicable in this case where a competitive range was never established and DynCorp's proposal was never disqualified.[4] It is important to note that the Federal Circuit's holding in Birch was based almost entirely upon the language of the prior FAR provision concerning discussions and the establishment of the competitive range– FAR § 15.609 (1996). The prior provision stated that "[w]hen there is doubt as to whether a proposal is in the competitive range, the proposal should be included." FAR § 15.609(a) (1996); cf. FAR § 15.306(c)(1) ("the contracting officer shall establish a competitive range of all of the most highly rated proposals"). Whereas the prior regulation provided that a contracting officer must include in the competitive range all proposals that have a reasonable chance of being selected for award, the revised regulation contains no such requirement. Compare FAR § 15.609(a) (1996) with FAR § 15.306(c)(1). Therefore, as stated in the intervenor's motion for judgment upon the administrative record, it could be argued that even if the Air Force had created a competitive range, it was not required to keep DynCorp's [*****] proposal within the competitive range. See Int. Mot. at 32-33.[5] The less restrictive language used by the current regulation supports the interpretation that agencies have more discretion on which offerors are

---

[4] This paragraph responds to the second question set forth in this Court's order of February 27, 2007: "What impact, if any, has the FAR Part 15 Rewrite, cited above, had on the precedential value of the discussions of competitive range determinations and the level of scrutiny applied to them found in Birch & Davis International, Inc. v. Christopher, 4 F.3d 970, 973-74 (Fed. Cir. 1993)?"

[5] "Int. Mot.__" refers to defendant-intervenor's cross-motion for judgment upon the administrative record, filed on February 26, 2007.

included in the competitive range. The competitive range needs to be composed of only the most highly rated proposals. It is well-established that an agency's technical ratings for proposals are afforded wide discretion. See Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 694, 699 (2006) ("Ratings for technical quality are the 'minutiae of the procurement process . . . [and] involve discretionary determinations of procurement officials that a court will not second guess.'") (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)). In any event, the level of scrutiny applied to competitive range determinations is inapposite to this case where the record clearly demonstrates that there was no competitive range established and that DynCorp's proposal was not disqualified from the evaluation process.[6] As demonstrated above, the Air Force was not required to conduct discussions or establish a competitive range where the solicitation contemplated award without discussions.

[6] DynCorp contends that the Government's statements that there was no competitive range and that DynCorp was not disqualified from the procurement are "post-hoc rationalizations" that are contradicted by the administrative record. Pl. Resp. at 9. Contrary to DynCorp's assertions, the Government's decision not to establish a competitive range is well-documented in the administrative record. AR 745, 783. Additionally, while DynCorp's receipt of a [*****], see AR 800, Air Force FAR Supplement ("AFFARS") § 5315.305, the Air Force did not disqualify it from the CAM acquisition. The Source Selection Decision Document ("SSDD") demonstrates that DynCorp's proposal was evaluated fully on every factor, and does not state that the award was made to M1 because DynCorp's proposal was disqualified. See AR 794-808. Additionally, where the award is made based upon initial proposals and there is no establishment of a competitive range, there is no need to disqualify any proposals. See FAR § 15.306(c).

II. The Air Force Did Not Conduct Discussions With Either Offeror

A. Post FAR Part 15 Rewrite Decisions Concerning The Distinction Between Clarifications And Discussions[7]

As we noted in our opening brief, the most helpful case for defining the distinction between clarifications and discussions is the Federal Circuit's decision in Information Technology and Applications Corporation v. United States, 316 F.3d 1312 (Fed. Cir. 2003). See Def. Mot. at 22-23.[8] In that case, the court contrasted the definition of "discussions"– negotiations that take place after the establishment of the competitive range that are undertaken with the intent of allowing proposal revisions– with the definition of "clarifications"– limited exchanges between the Government and offerors giving offerors the opportunity to clarify aspects of proposals or to resolve minor or clerical errors. 316 F.3d at 1321. The court noted that the stated purpose of the 1997 amendments to section 15 of the FAR was to "provide for empowerment and flexibility" and "shift from rigid rules to guiding principles." Id. (citing 62 Fed. Reg. 51,255 (Sept. 30, 1997)). The court found that:

> [T]he definition of "clarifications" was significantly broadened. Rather than being "for the sole purpose of eliminating minor irregularities, informalities, or apparent clerical mistakes," clarifications now provide offers 'the opportunity to clarify certain aspects of proposals . . . ." Compare 48 C.F.R. § 15.601 (1991), with 48 C.F.R. § 15.306(a)(2) (2002).

316 F.3d at 1322. The court also rejected the appellant's argument that evaluation notices

[7] This section responds to the first question set forth in the Court's order of February 27, 2007: "In light of the FAR Part 15 Rewrite, effective October 10, 1997, see 62 Fed. Reg. 51,224, 51,224-29 (Sept. 30, 1997), what are the post-rewrite decisions concerning the distinction between clarifications and discussions that are most helpful in reviewing the six evaluation notices sent by the Air Force to M1, and M1's responses to those notices?"

[8] "Def. Mot. __" refers to defendant's motion for judgment upon the administrative record, filed on February 26, 2007.

("ENs") that required additional information could not be clarifications. The Federal Circuit found that "[a]ny meaningful clarification would require the provision of information." Id. at 1323. Additionally, the court found that clarifications could be essential for the evaluation of a proposal. Id. Finally and most importantly, the Federal Circuit gave deference to the agency's determination that the communications at issue in that case were clarifications and not discussions, finding that "[i]t was a reasonable interpretation of the acquisition regulations to view the ENs as clarifications, and we defer to that interpretation." Id.

In contrast to clarifications, "discussions" involve more fundamental deficiencies.

> As a general rule, discussions occur where the government communicates with an offeror for the purpose of obtaining information essential to determine the acceptability of a proposal, or provides the offeror an opportunity to revise or modify its proposal in some material respect. Priority One Servs., Inc., B-288836, B288836.2, Dec. 17, 2001, 2002 CPD 79 at 5. In situations where there is a dispute regarding whether communications between an agency and an offeror constituted discussions, the acid test is whether an offeror has been afforded an opportunity to revise or modify its proposal. TDS, Inc., B-292624, Nov. 12, 2003, 2003 CPD 204 at 6. Where an agency engages in discussions, it must afford all offerors in the competitive range an opportunity to engage in meaningful discussions. FAR 15.306(d)(1).

Lockheed Martin Simulation, Training & Support, Comp. Gen. Dec. B-292,836.8-.10, 2005 CPD ¶ 27, 2004 WL 3217797, at *6 (Nov. 24, 2004). Accordingly, the post FAR Part 15 rewrite decisions make clear that when communications are used to permit offerors to negotiate and revise their proposals in some material respect, they constitute discussions; however, when communications permit offerors to correct minor or clerical errors or clarify some aspect of their proposals, they constitute clarifications.

B. The Communications Between M1 And The Air Force Constituted Clarifications Because M1 Did Not Revise Its Proposal In Any Material Respect

DynCorp argues that the six ENs sent to M1 constituted discussions rather than clarifications because they provided M1 the opportunity to revise its proposal. Pl. Resp. at 10. Further, DynCorp alleges that the declaration attached to the Government's brief from Contracting Officer Jacquelyn Cooper is "nothing more than a post hoc rationalization that should be ignored by this Court." Id. at 18.

Regarding this latter argument, the administrative record was clear that the Air Force issued the ENs to M1 for clarification purposes only, and did not intend to conduct discussions with M1. AR 783. The ENs were all labeled as clarifications. AR 655-65. However, the reasons for why the Air Force requested these clarifications from M1 were not explained in the administrative record. Supplementation of the administrative record is permitted when "agency action is not adequately explained in the record before the court." Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 325 n.12 (2000). Ms. Cooper's declaration fills in previously unrecorded details of contemporaneous conclusions. "Where, as here, a post-protest explanation simply fills in previously unrecorded details of contemporaneous conclusions, [the GAO has considered it in their] review of the rationality of selection decision so long as the explanation is credible and consistent with the contemporaneous record, which is the case here." Sayed Hamid Behbehani & Sons, B-288,818.6, 2002 CPD ¶ 163, 2002 WL 31159457, at n.2 (Sept. 9, 2002) (citing NWT, Inc.; PharmaChem Labs., Inc., B-280988, B-280988.2, Dec. 17, 1998, 98-2 CPD ¶ 158 at 16). Here, Ms. Cooper's declaration merely provides the details of why the Air Force sent the six clarification ENs to M1. Her explanation is consistent with the contemporaneous record.

Moreover, even if this Court did not consider Ms. Cooper's declaration, the ENs sent to

M1 were clearly requests for clarifications rather than discussions. As we noted in our opening brief, all ENs issued to M1 were issued for clarification purposes or to correct minor or clerical errors in its proposal, and M1's responses did not revise its proposal in anyway or impact the evaluation results.[9] Def. Mot. at 21. Discussions must have a competitive impact– they must give offerors a reasonable opportunity to address those areas of weakness which could have a competitive impact. Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 124, 131 (2000) (citation omitted). In contrast, "questions and requests for clarifications which do not address critical deficiencies in an offeror's proposal do not constitute meaningful discussions." Id. (citation omitted).

Here, the record demonstrates that the ENs sent to M1 did not address critical deficiencies in M1's proposal but merely constituted questions and requests for clarifications. AR 655-65. All responses were deemed acceptable by the Air Force. Id. There was no negotiation, no bargaining, no statement that the requested information constituted deficiencies or weaknesses in M1's proposal. See Def. Mot. at 23-25. EN P-1 requested that M1 [*****]. AR 662. Even though M1's response [*****], AR 676-96, [*****] merely completed the mathematical computation that the Air Force requested. It did not change any price amount contained in M1's initial proposal. As this Court has previously noted, a clerical or mathematical

---

[9] DynCorp argues that the fact that M1's responses did not impact the evaluation process is not dispositive of whether discussions occurred. However, discussions may change a technically unacceptable proposal into an acceptable one. Securenet Co. Ltd. v. United States, 72 Fed. Cl. 800, 815 (2006). Where an agency seeks information from an offeror that is required to meet the technical acceptability standards, discussions have occurred. Id. Therefore, when discussions have occurred, an offeror's responses would impact the evaluation process. Although the overall results of the evaluation may not change, the responses would be evaluated to determine whether a proposal was correctly rated or whether its rating should be altered. Here, there is no evidence in the administrative record that the Air Force considered the responses provided by M1 during the evaluation process, or that the Source Selection Authority ("SSA") considered M1's responses before it made the award decision.

error is a "quintessential example of a clarification." Int'l Res. Recovery, Inc. v. United States, 64 Fed. Cl. 150, 162 (2005) (citations omitted).

EN MC-1 requested that M1 [*****]. AR 655. M1 confirmed that [*****]. Id. Communications by which an agency obtains additional information about subcontractors listed in successful offeror's proposal are permissible clarifications. See Info. Tech., 316 F.3d at 1322-23.

ENs P-2 and P-3 requested that M1 [*****]. AR 663-65. Both of these matters and all of the solicitation requirements found under ¶ L-10.3, entitled "Information Other Than Cost And Pricing Data," AR 161, relate solely to the Air Force's responsibility determination pursuant to FAR § 9.104-1. FAR § 9.104-1 provides that a prospective contractor must "have adequate financial resources to perform the contract," FAR § 9.104-1(a), and have "the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them . . ." FAR § 9.104-1(e). A financial statement clearly goes towards the determination of whether a contractor has adequate financial resources. As will be discussed below, a DCMA-approved purchasing system, likewise goes to a determination of the contractor's responsibility. The GAO has held that "[a] request for, or providing of, information that relates to offeror responsibility, rather than proposal evaluation, does not constitute discussions and thus does not trigger the requirement to hold discussions with other competitive range offerors." Gen. Dynamics-Ordnance, 2005 WL 1468418, at *9. Accordingly, the Air Force's requests for information relating to M1's responsibility did not constitute discussions.

EN MC-2 requested that M1 [*****]. AR 1333. M1 was not provided with an opportunity to revise its proposal; rather, M1 was asked [*****]. Def. Mot. at 23. Although M1's response to the EN [*****] AR 658– the Air Force evaluated only the terms of M1's initial

proposal in its SSDD. AR 798. The SSDD evaluated [*****], not M1's response to the EN.

Finally, EN MC-3 requested that M1 [*****]. AR 660. M1 responded that [*****]. Id. Its response did not revise its proposal in any way.

C. Any Communications With DynCorp Regarding [*****] In Its Proposal Would Have Constituted Discussions

DynCorp argues that if the communications between the Air Force and M1 constituted clarifications, then DynCorp should have been given an equal opportunity to "clarify" its proposal. Pl. Resp. at 20-22. DynCorp's argument presumes that the clarifications with M1 permitted M1 to revise its proposal on a material requirement of the solicitation. As discussed above, DynCorp's presumption is incorrect. In contrast to the clarifications issued to M1 for clarification purposes, correcting mathematical errors, and for a responsibility determination, the communications that DynCorp requests are communications that would have met the quintessential definition of discussions. The communications proposed by DynCorp would have permitted DynCorp to revise its proposal so that it could have become technically acceptable.

The Air Force assessed DynCorp with [*****].[10] AR 799-800. If the Air Force had communicated with DynCorp regarding [*****] in its proposal, which the Air Force is required to do if it conducts discussions, see FAR § 15.306(d)(3), it would have provided DynCorp with the opportunity to revise or modify its proposal in a material respect. See Lockheed Martin

[10] DynCorp argues that the solicitation did not clearly spell out the requirements for the [*****]. Pl. Resp. at 6. The solicitation required that offerors demonstrate [*****]. AR 175. It was up to the individual offerors to explain how they [*****]. As the chairperson of the Air Force's source selection technical team explained in her declaration, DynCorp's proposal [*****]. Tuttle Decl. ¶ 4. As a best value procurement, AR 745, the Air Force had to determine which proposal provided the greatest overall benefit for the Government, and it determined that [*****]. DynCorp's mere disagreement with the Air Force's evaluation "fall[s] far short of meeting the heavy burden of demonstrating that the findings in question were the product of an irrational process and hence arbitrary and capricious." Microdyne Outsourcing, 72 Fed. Cl. at 699 (quoting Banknote Corp. of Am. v. United States, 56 Fed. Cl. 377, 384 (2003)).

Simulation, 2004 WL 3217797, at *6. Accordingly, clarifications would not have been sufficient to make DynCorp's proposal technically acceptable. The Air Force would have had to conduct discussions with both offerors.

## III. M1 Was Eligible For Award

### A. M1's Proposal Satisfied All Material Requirements Of The Solicitation

In its response brief, DynCorp argues that all requirements of the solicitation are material, and that the Air Force should enforce a zero tolerance requirement. Pl. Resp. at 24 (citing AR 173). DynCorp's argument is illogical. If all the requirements of the solicitation were material, then the solicitation would be overly restrictive and unduly restrictive of competition. See Chas. H. Tompkins Co. v. United States, 43 Fed. Cl. 716, 723 (1999).

In a typical Government contract, the solicitation and related regulations, in effect, require the contracting officer to make separate determinations on the issues of "responsiveness" and "responsibility" prior to awarding the contract. VMS Hotel Partners v. United States, 30 Fed. Cl. 512, 514 (1994). Responsiveness addresses whether a bidder has promised to perform in the precise manner requested by the Government. See Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 522 (1991) (citing 48 C.F.R. § 14.301(a)(1988)).

> To be considered for an award a bid must comply in "all material respects" with the invitation for bids. "A responsive bid is one that, if accepted by the government as submitted, will obligate the contractor to perform the exact thing called for in the solicitation." . . . If there is a material nonconformity in a bid, it must be rejected. . . . Material nonconformity goes to the substance of the bid which affects the price, quality, quantity, or delivery of the article or service offered.

Id. (quoting Wright Assocs., Inc. Comp. Gen. Dec. B-238,656, 90-1 CPD ¶ 549 (June 12, 1990); citing Blount v. United States, 22 Cl. Ct. 221, 227 (Cl. Ct. 1990)) (additional citations omitted).

In contrast, responsibility addresses the issue of bidder's performance capability, which includes "inquiries into financial resources, experience, management, past performance, place of performance, and integrity." Id. (citing Blount, 22 Cl. Ct. at 227). In contrast to responsiveness, an offeror may present evidence of responsibility after bid opening up until the time of award. Id. at 522-23. In terms of identifying whether a particular requirement is related to responsiveness or responsibility, the Court should consider the purpose for which the data or information is to be used. Bean Drudging, 22 Cl. Ct. at 523 (citing J. Cibinic & R. Nash, Formation of Government Contracts 405-06 (1986)). If the data required is used to determine an offeror's ability or capacity to perform, the matter is one of responsibility, and failure to submit information with the bid will have no adverse effect on the offeror. Id.

Accordingly, solicitations, by their nature, require information that is responsive to the Government's requirements and information that can be used to determine an offeror's responsibility. As will be demonstrated below, M1's proposal satisfied all material requirements of the solicitation, and the fact that [*****] had no effect on its eligibility for award because those documents were requested in order to make a responsibility determination.

B. A DCMA-Approved Purchasing System Is Not A Material Requirement Of The Solicitation

[*****] requested in the ENs sent to M1, AR 663-65, clearly go to a determination of M1's responsibility and do not address material requirements of the solicitation.[11] First, the only discussion of M1's accounting and purchasing systems and M1's financial statements in the Air

[11] This section addresses the fourth question set forth in this Court's order of February 27, 2007: "What analogous decisions discuss whether a solicitation requirement such as 'provide documentation of a Defense Contract Management Agency (DCMA)-approved purchasing system which is in compliance with your disclosure statement' is a material requirement, and/or whether that requirement goes to responsibility or to responsiveness?"

Force's decision-making process is found in the Air Force's "Determination of Contractor Responsibility for Contract Award." AR Tab 17. The information was reviewed solely to determine whether M1 had adequate financial resources, AR 811, and whether M1 "has the organization, experience, accounting and operational controls, and technical skills necessary to perform the services required under the contract." AR 813. The Air Force must make this responsibility determination pursuant to FAR § 9.104-1. See AR 811.

> Unlike with "responsiveness," in assessing the contractor's "responsibility," the contracting officer is not limited to the information contained in the bid when opened. Rather, the contracting officer may solicit and the contract may supply additional information to demonstrate that the contractor is capable of performing the contract work.

VMS Hotel, 30 Fed. Cl. at 514-15 (citing 48 C.F.R. § 9.105-1).

In Chas. H. Tompkins Co. v. United States, 43 Fed. Cl. 716 (1999), this Court provided a useful analysis for determining whether a solicitation requirement constituted a "definitive responsibility criteria" under FAR § 9.104-2,[12] or whether it merely constituted information

---

[12] FAR § 9.104-2 states:

> a) When it is necessary for a particular acquisition or class of acquisitions, the contracting officer shall develop, with the assistance of appropriate specialists, special standards of responsibility. Special standards may be particularly desirable when experience has demonstrated that unusual expertise or specialized facilities are needed for adequate contract performance. The special standards shall be set forth in the solicitation (and so identified) and shall apply to all offerors.
>
> (b) Contracting officers shall award contracts for subsistence only to those prospective contractors that meet the general standards in 9.104-1 and are approved in accordance with agency sanitation standards and procedures.

48 C.F.R. § 9.104-2. In this case, there is no indication in the solicitation that the Air Force developed "special standards" of responsibility that could be considered to be definitive

required to make a general responsibility determination. Id. at 720-22. In that case, the Court closely examined the plain language and scheme of the solicitation, construing the terms of the provisions as a whole. Id. Applying that same examination to the plain language of the solicitation in this case, specifically ¶ L-10.3, AR 161, entitled "Information Other Than Cost or Pricing Data," reveals that the information included in both ¶¶ L-10.3.1 and 10.3.2 was merely requested so that the Air Force could make a general responsibility determination pursuant to FAR § 9.104-1. That FAR provision requires that agencies make determinations that prospective contractors "[h]ave adequate financial resources to perform the contract" and "[h]ave the necessary organization, experience, accounting and operational controls" in order to perform the contract. FAR § 9-104.1(a), (e). The information requested in ¶ L-10.3 of the solicitation was required in order for the Air Force to make a general determination of contractor responsibility.

Moreover, as we noted in our opening brief, Def. Mot. at 33-34, the DCMA-approved purchasing system requirement does not even apply to M1 because M1 is a small business. Small businesses are exempt from the requirement to have a Cost Accounting Standards ("CAS") disclosure statement. See 48 C.F.R. § 9903.202-1(a). Additionally, the contracting officer determines the need for a contractor purchasing system review ("CPSR") based upon "the past performance of the contractor, and the volume, complexity and dollar value of subcontracts." 48 C.F.R. § 44.302(a). If a contractor's sales to the Government "(excluding competitively awarded firm-fixed-price and competitively awarded fixed-price with economic price adjustment contracts and sales of commercial items pursuant to Part 12) are expected to exceed $25 million during the next 12 months," the contracting officer must perform a review to determine if a CPSR is

---

responsibility criteria under FAR 9.104-2.

needed. Id. In order to qualify as a small business for an aircraft maintenance service contract, a contractor cannot exceed sales in excess of $6.5 million per year. See 13 C.F.R. § 121.201. Accordingly, small businesses are likewise exempt from the requirement for a CPSR, as M1 correctly noted in its initial proposal and its response to the Air Force's EN. AR 1749, 663.

The exemption of small business from the CAS disclosure statement requirement and the CPSR requirement illustrates the lack of logic in DynCorp's argument that a DCMA-approved purchasing system is a material requirement of the CAM contract. If that was the case, then all small businesses would effectively be excluded from bidding on an acquisition based upon full and open competition. See AR 744. Clearly, the request for a DCMA-approved purchasing system, as well as the request for the most recent financial statements, goes to a determination of the contractor's responsibility pursuant to FAR § 9.104-1, and ¶ L-10.3 does not set forth material requirements for the solicitation.

IV. Neither The Air Force Nor M1 Illegally Modified M1's Proposal Post Award

In its response brief, DynCorp argues for the first time that M1 illegally modified its offer post award, and that the Air Force's evaluation of M1's proposal was flawed because [*****]. Pl. Resp. at 26-28. DynCorp alleges that for the first time the Air Force disclosed that [*****] was not included in the contract with M1. Pl. Resp. at 26. However, the Government filed the administrative record in this matter on February 9, 2007, and it included the full contract with M1. AR Tab 20. Appendix M to that contract incorporates M1's proposal items, and [*****]. See AR 1135-37. Accordingly, DynCorp has failed to explain why it is raising this argument for the first time in its response/reply brief. See Novosteel SA v. United States, Bethlehem Steel Corp., 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (holding that appellant had waived argument by failing to present it in the principal summary judgment brief filed with the trial court, and

observing that "[r]aising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration"). In any event, the argument is without merit and will be addressed below.

First of all, there is no evidence in the administrative record that M1 ever revised its proposal [*****]. The Air Force's discretionary decision not to include [*****] in the M1 contract does not revise M1's proposal. As the contracting officer's declaration explains, [*****] was not among the strengths that the Air Force decided to incorporate into the contract immediately. Cooper Decl. at pg. 5. The solicitation clearly stated that portions of the successful offeror's proposal <u>may</u> be incorporated into the contract. AR 154 (¶ L-6.1). Additionally, it advised that "any feature or technical offerings that exceed PWS requirements and are accepted by the Government <u>may</u> be incorporated as a requirement in the resultant contract." AR 174 (¶ M-4.3) (emphasis added). Accordingly, the solicitation makes clear that a proposals strengths may be incorporated into the contract, but the Air Force has the discretion to decide which strengths to incorporate.

Furthermore, DynCorp's allegation that the evaluation was flawed because it failed to disclose a potential liability to the SSA is contradicted by the administrative record. In the proposal analysis report for the CAM acquisition, the Air Force noted that [*****]. AR 768-771. However, its recommendation regarding [*****] was limited:

> [*****]

AR 767. Accordingly, the Air Force's discretionary decision not to include [*****] in the CAM contract is supported by the record. Moreover, Ms. Cooper's declaration is also consistent with the record. <u>Compare</u> Cooper Decl. at pg. 5 <u>with</u> AR 767, 1135-37.

In conclusion, M1 did not illegally modify its proposal post-award. The Air Force had the discretion, as stated clearly in the solicitation, to determine which parts of M1's proposal would be included in the contract. Its decision not to include [*****] in the contract at this time, was not irrational, arbitrary or capricious, or in violation of any law.

V. DynCorp Has Not Demonstrated Irreparable Injury

DynCorp continues to argue that it will be irreparably harmed by the loss of profits and employees because of the loss of this procurement. In another case before this Court, where the plaintiff alleged that the loss of its contracts would "significantly harm" its business, including the necessity of dismissing many of its employees, this Court found that economic loss without more does not rise to the level of irreparable injury. Spherix, Inc. v. United States, 62 Fed. Cl. 497, 506 (2004) (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983)). DynCorp's alleged harm stems from the loss of the contract itself, and not from the loss of the opportunity to compete for the CAM acquisition. However, there is no requirement that the Government award acquisitions to incumbent contractors. Because DynCorp has failed to demonstrate success on the merits as well as irreparable injury, its request for a permanent injunction should be denied.

CONCLUSION

For these reasons and the reasons set forth in our opening brief, we respectfully request that this Court grant our motion for judgment upon the administrative record, deny plaintiff's cross-motion and request for injunctive relief, and dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Todd M. Hughes
TODD M. HUGHES
Assistant Director

OF COUNSEL:

MAJOR CHRISTOPHER M. SCHUMANN
Commercial Litigation Division
Air Force Legal Operations Agency
1501 Wilson Blvd., Suite 604
Arlington, VA 22209-2403

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

electronically filed
March 6, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 26th day of March, 2007, a copy of the foregoing "AGREED-UPON REDACTED COPY" of "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad